1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BESSIE IRENE WALTZ, | 1:07-cv-1691-SMS |
| Plaintiff, | ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL DEPOSITION OF JUDGE KRISTI KAPETAN AND CINDY BOUKIDIS AND PRODUCTION OF DOCUMENTS (DOC. 23) |
| v. | |
| UNITED STATES OF AMERICA DEPARTMENT OF AGRICULTURE, et al., | |
| Defendants. | ORDER DIRECTING THE PARTIES TO MEET AND CONFER AND TO SCHEDULE A TELEPHONIC STATUS CONFERENCE CONCERNING DISCOVERY AND THE MOTION TO DISMISS |

Plaintiff is proceeding with a civil action in this Court. The matter has been referred to the Magistrate Judge for all proceedings, including the entry of final judgment, pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73(b), and Local Rule 73-301. Pending before the Court is Plaintiff's motion to compel depositions and production of documents.

The motion came on regularly for hearing on April 4, 2008, at 9:30 a.m. in Courtroom 7 before the Honorable Sandra M. Snyder, United States Magistrate Judge. Ernest Robert Wright of the United States Attorney's Office appeared on behalf of Defendants; Warren R. Paboojian appeared on behalf of Plaintiff.

1

After argument, Plaintiff and Defendants submitted supplemental briefing, and the matter was submitted to the Court.

I. Background

    A. Complaint in the Present Action

    In this action (Waltz II), Plaintiff sues for damages suffered by Plaintiff Bessie Irene Waltz from physical injuries allegedly caused by the negligent conduct of an employee of Defendants United States Department of Agriculture (USDA), United States Forest Service (USFS), and United States of America (USA). (Cmplt. filed November 20, 2007.)

    Plaintiff alleges that she fully complied with the Federal Tort Claims Act by presenting a claim to the U.S.D.A. Forestry Service, which was denied by the agency; any time periods, including 28 U.S.C. § 2401(b), are subject to equitable tolling, equitable estoppel, or other equitable or legal principle. (Id. ¶ 10.)

    Plaintiff alleges with respect to an earlier action, case number 1:06-cv-01831-SMS, filed on December 18, 2006 (Waltz I), that former Assistant United States Attorney (AUSA) Kristi Kapetan, who is one of the witnesses whose deposition Plaintiff seeks to compel, represented that although the complaint was premature (because of lack of exhaustion of the related administrative claim), Plaintiff would not need to re-file her complaint because the original complaint would be honored, and the AUSA would not raise the issue. Later acts of the government confirmed the representations, and in reliance thereon and induced thereby, Plaintiff did not re-file her complaint until she filed the complaint in the present action, Waltz II, on

2

1  November 20, 2007. (Id. ¶ 10.)

2  Former AUSA Kapetan was appointed to the state superior

3  court bench on or about June 22, 2007. Discovery relating to the

4  merits of Plaintiff's claim took place in Waltz I, and the time

5  limit for filing a new, technically timely complaint passed. On

6  October 25, 2007, an AUSA who had assumed Judge Kapetan's duties

7  after her departure from the office moved to dismiss the

8  complaint for lack of subject-matter jurisdiction based on the

9  failure to file a new complaint during the six-month period

10 following denial of the administrative claim. (Id.)

11 Plaintiff's position with respect to the timeliness of Waltz

12 II is that because of the representations and assurances of

13 Defendants' counsel, the six-month statute of limitations

14 provided for by § 2401 is tolled from at least February 13, 2007

15 (the date of the agency's denial of the administrative claim),

16 until October 25, 2007 (the date upon which Defendants' counsel

17 allegedly changed its position and moved to dismiss in Waltz I).

18 (Id.)

19          B. Dismissal of Waltz I

20 The Court takes judicial notice[1] of the Court's docket and

21 documents filed in Waltz I, which reflect that on January 16,

22 2008, an order granting Defendant's motion to dismiss was filed

23 in Waltz v. United States of America, et al., 06-1831-SMS (Doc.

24 56.)

25 In the motion to dismiss in Waltz I, the government had

26

27       [1]The Court may take judicial notice of court records. Fed. R. Evid.
   201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993);
28 Valerio v. Boise Cascade Corp., 80 F.R.D. 626, 635 n. 1 (N.D. Cal. 1978),
   aff'd, 645 F.2d 699 (9th Cir. 1981).

1  argued that due to premature filing of the complaint (before the

2  administrative claim under the Federal Tort Claims Act had been

3  rejected, or before six months had passed after either action on

4  the claim or rejection by operation of law), this Court lacked

5  subject matter jurisdiction; further, the limitations period of

6  six months after rejection of the claim had passed before the new

7  complaint was filed on November 20, 2007, and thus the second

8  action was barred by the statute of limitations. (Memo. at p. 2)

9  The government argued that equitable tolling or equitable

10 estoppel did not apply with respect to the running of the statute

11 of limitations.

12    Plaintiff opposed the motion and sought leave to file an

13 amended complaint because the government had changed its

14 position, previously expressed by Judge Kapetan as an AUSA, that

15 no new complaint needed to be filed; Plaintiff argued that the

16 six-month limitations period should be equitably tolled and that

17 the government should be equitably estopped from asserting the

18 statute of limitations; the government should not be permitted to

19 assert the limitations period because it had induced Plaintiff

20 not to file a new complaint during the permissible statutory

21 period. Further, Plaintiff argued that an amended complaint could

22 correct a jurisdictional issue in some circumstances; the

23 government had agreed or should agree to that position, the Court

24 should order a new or amended complaint filed in Waltz I, and the

25 Court should coordinate the action with the present action (Waltz

26

27

28

1 II), which had been filed on November 20, 2007.[2] (Memo. in Supp.

2 of Mot. to File Amended Cmplt., pp. 1-2; Order of January 16,

3 2008, p. 8 n. 2.) Plaintiff had cited authority for the

4 proposition that the government should be held to have agreed, or

5 should be required to agree, to the filing of an amended

6 complaint based on equitable principles and waiver of sovereign

7 immunity. (Memo. in Supp. of Mot. to Amend, pp. 6-7.)

8        In its dispositive order, the Court determined that the

9 government had established in its moving papers that Plaintiff

10 had failed to exhaust administrative remedies and had prematurely

11 filed the complaint, and Plaintiff had failed to establish an

12 equitable basis for jurisdiction; thus, the Court lacked subject-

13 matter jurisdiction. (Order at pp. 7-9.) The Court stated its

14 disposition:

15        The Court has thus exercised its jurisdiction to
         determine jurisdiction, and it concludes that it
16       is without subject-matter jurisdiction over the
         instant action due to Plaintiff's having failed
17       to comply with the FTCA before filing this action.
         The motion to dismiss will be granted.
18
         Because the Court decides the motion before it on
19       the basis of lack of subject matter jurisdiction,
         it is unnecessary to consider the statute of limitations.
20
         Further, because this Court lacks subject-matter
21       jurisdiction over this action, Plaintiff's motion for
         leave to file an amended complaint is denied by
22       operation of law.

23 (Order at p. 22.)

24        In the course of its analysis, the Court expressly stated

25 _____

26        [2] Waltz II was assigned to different district and magistrate judges from Waltz I at the time the motion to dismiss in Waltz I was made and heard; after the hearing on the motion, the parties to Waltz II consented to Magistrate Judge jurisdiction, and the case was assigned to the undersigned Magistrate Judge because it was related to Waltz I. At the hearing on the motion to dismiss in Waltz I, Plaintiff requested that the Court deny the motion to dismiss and coordinate Waltz I and Waltz II (Mot. Dismis, Waltz I, Ex. 2, p. 27); however, the only motion, or request for relief, formally noticed and briefed before the Court in Waltz I was the motion to dismiss.

that Plaintiff had not met her burden of demonstrating

jurisdiction in this Court:

> It is the Plaintiff's burden to establish jurisdiction
> and to establish the equitable bases upon which
> Plaintiff seeks to rely. After considering all the
> evidence, the Court concludes that Plaintiff has not
> submitted evidence sufficient to meet her burden
> in this case. The Court has considered all the
> evidence submitted to it, and it is particularly
> swayed by the lack of any written confirmation or
> documentation of the alleged statement by
> the Defendants' counsel, and by the improbability
> of the government's counsel's having purported
> to waive subject-matter jurisdiction.

(Order at 20.)

The Court then made affirmative findings that were based on

the limited evidence submitted to it and that were intended to

address the Plaintiff's asserted equitable basis for subject-

matter jurisdiction concerning affirmative, intentional conduct

of the Defendant. (Order at pp. 20-21.) Within the framework set

forth (Plaintiff's affirmative burden of proof), the Court found

that no promise or representation and no wrongful conduct on the

part of the government occurred. (Id.) Although the Court also

stated that it could not conclude that Plaintiff's counsel was

diligent or that any ignorance was excusable (id. pp. 21-22), as

is more fully discussed below, the Court concludes that these

findings were legally inapposite and unnecessary to the limited

issue before the Court.

C. The Present Motion

On March 13, 2008, Plaintiff served and filed a motion to

compel depositions of Judge Kapetan and Cindy Boukidis and

production of documents, including a notice, proposed order,

memorandum in support, and declaration of Warren R. Paboojian,

Plaintiff's counsel, with exhibits. On March 25, 2008, Defendant filed a memorandum in opposition with attachments, and errata with amended exhibits and appendices the following day. Plaintiff filed a reply on April 1, 2008. At hearing, Defendant submitted two cases to the Court. After hearing, Defendants filed a supplemental brief on April 11, 2008, and Plaintiff filed a supplemental brief and amended supplemental brief on April 18, 2008.

Plaintiff seeks to compel 1) the depositions of former AUSA Kapetan and of Cindy Boukidis, participants and witnesses to interaction, including conversations in person and on the telephone, between representatives of the government, on the one hand, and attorneys who represented Plaintiff on the other; and 2) production of documents regarding those conversations. If the discovery is denied, then Plaintiff alternatively seeks to have the declarations of Judge Kapetan and Boukidis stricken and not considered in an upcoming motion to dismiss, which Defendant has already filed.

Defendant has refused to produce the witnesses and documents, and Defendant argues that the discovery sought is not relevant, is foreclosed by res judicata or collateral estoppel, and even if otherwise discoverable in the Court's discretion, should not be discovered in this case.

II. Discoverable Information

Fed. R. Civ. P. 37(a) provides that on notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery; the motion must include a certification that the movant has in good faith conferred or

attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action. A motion for an order to a party must be made in the court where the action is pending, and a motion for an order to a nonparty must be made in the court where the discovery is or will be taken. <u>Id.</u>[3]

Motions to compel and for sanctions are appropriate where a party fails to make a disclosure required by Rule 26(a). Fed. R. Civ. P. 37(a).

Unless otherwise limited by court order, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense, including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the Court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

All discovery is subject to the limitations imposed by Rule 26(b)(2)(C), which provides that on motion or on its own, the Court must limit the frequency or extent of discovery otherwise

---

[3] Although Plaintiff asserts that this motion is governed by statutes and regulations concerning obtaining production of information and oral depositions of governmental employees (Pltf.'s Mem. in Supp. of Motion, pp. 2-3), Plaintiff does not brief compliance with the statutes or whether or not the standards set forth therein modify or affect the standard of decision as to whether or not the discovery requested here should proceed. Plaintiff has not established that the cited provisions supercede the authority of the applicable Rules of Federal Civil Procedure.

1 allowed by these rules or by local rule if it determines that 1)
2 the discovery sought is unreasonably cumulative or duplicative,
3 or can be obtained from some other source that is more
4 convenient, less burdensome, or less expensive; 2) the party
5 seeking discovery has had ample opportunity to obtain the
6 information by discovery in the action; or 3) the burden or
7 expense of the proposed discovery outweighs its likely benefit,
8 considering the needs of the case, the amount in controversy, the
9 parties' resources, the importance of the issues at stake in the
10 action, and the importance of the discovery in resolving the
11 issues. Fed. R. Civ. P. 26(b).

12      Plaintiff seeks information, including testimony under oath
13 as well as documentation, concerning the subjects of declarations
14 of Judge Kapetan and Boukidis that were filed in Waltz I.
15 Further, Defendant has submitted the declarations and notes of
16 Judge Kapetan and Boukidis, as well as the denial of the
17 administrative claim dated February 13, 2007, in support of its
18 motion to dismiss the instant action that was filed on February
19 19, 2008. The motion to dismiss is based on the running of the
20 statute of limitations. Defendant argues in the motion to dismiss
21 that the determination of this Court in Waltz I that it lacked
22 jurisdiction precludes any further litigation of the question of
23 the timeliness of the present action because of collateral
24 estoppel; further, neither equitable estoppel nor equitable
25 tolling renders the present complaint timely.

26      Waltz I involved a highly unusual situation; although the
27 evidence before the Court was only documentary and was skeletal,
28 it appeared from the limited evidence presented that the

government substantially litigated the action in <u>Waltz</u> I, engaged in significant discovery, never disclosed Judge Kapetan in discovery as a witness, failed fully or adequately to disclose Boukidis or any notes, did not mention any defect in subject-matter jurisdiction during the Rule 26(f) scheduling conference before the Court during the period within which a technically timely complaint could have been filed, and then moved to dismiss the action for lack of subject-matter jurisdiction at a late stage in the proceedings after the time for filing a technically timely complaint had passed. These circumstances have yet to be explored during discovery, yet they raise significant issues concerning the conduct of the government's counsel, the processing of the case, the reasonable expectations of Plaintiff's counsel, the nature and quality of Plaintiff's counsel's conduct and reliance on the government's conduct, etc.

It is the Plaintiff's burden to establish equitable tolling by showing diligent pursuit of his or her rights and the presence of some extraordinary circumstance standing in the way. <u>Irwin v. Department of Veterans Affairs</u>, 498 U.S. 89, 96 (9th Cir. 1990). The issues in the present case concern the timeliness of the later complaint and equitable tolling; although there is some factual overlap with <u>Waltz</u> I, the legal issues are not the same, the universe of facts is broader in this case, the pertinent time period is longer, and the focus is on both the government's conduct and Plaintiff's counsel's conduct. The Court must consider and determine not only what the conduct of the government was, but also the conduct of Plaintiff's counsel, and whether or not counsel actively pursued judicial remedies and

1  exercised due diligence in preserving legal rights, or was
2  induced by misconduct into allowing the filing deadline to pass.
3  See, Irwin v. Department of Veterans Affairs, 498 U.S. 89 96
4  (1990); Alvarez-Machain v. United States, 107 F.3d 696, 701 (9th
5  Cir. 1996).

6      The Court concludes that the matters sought to be discovered
7  are relevant to a claim or defense in this action, and/or are
8  relevant to the subject matter of the action and are subject to
9  discovery for good cause shown.

10     The Court further rejects Defendant's argument and concludes
11 that at this stage of the case, it cannot be determined that any
12 discovery concerning the facts and circumstances pertinent to the
13 late filing of the complaint in the instant action is irrelevant
14 because of the strictness of the doctrine of equitable tolling.
15 At this point, the complete facts are unknown; the Court cannot
16 posit what will be the facts and circumstances that will bear
17 upon an assessment of the conduct of the government and its
18 counsel and the Plaintiff and Plaintiff's counsel.

19     III. Collateral Estoppel

20         A. Legal Standards

21     Defendant argues that the discovery is barred because the
22 Court actually decided the matters at issue in Waltz I, including
23 the issue of equitable tolling of the statute of limitations.
24 Defendant asserts that the issues of wrongful conduct and
25 misrepresentation, which are part of Plaintiff's defense of
26 equitable tolling and equitable estoppel in the instant case,
27 were conclusively decided in Waltz I. The government argues that
28 Court determined not only that the complaint in Waltz I was

1  premature, but also that no timely complaint was filed and that

2  Plaintiff had ample opportunity to do so during the period that

3  elapsed before the running of the statute of limitations.

4  (Deft.'s Opp., Doc. 33, pp. 2-3[4].) Further, the issue of whether

5  or not the government made any misrepresentation and whether the

6  deadline to file a complaint was equitably tolled was in fact

7  exhaustively litigated in the prior action. (Opp. p. 3.) Thus, no

8  discovery should be permitted.

9      A fundamental principle of common-law adjudication, embodied

10  in the related doctrines of res judicata and collateral estoppel,

11  is that a right, question, or fact distinctly put in issue and

12  directly determined by a court of competent jurisdiction cannot

13  be disputed in a subsequent suit between the same parties or

14  their privies. Montana v. United States, 440 U.S. 147, 153

15  (1979). Under res judicata, a final judgment on the merits bars

16  further claims by parties or their privies based on the same

17  cause of action. Id. Under collateral estoppel, once an issue is

18  actually and necessarily determined by a court of competent

19  jurisdiction, that determination of the issue is conclusive in

20  subsequent suits involving a party to the prior litigation, even

21  those based on a different cause of action. Id. The doctrine is

22  central to the conclusive resolution of disputes; further, when

23  parties have had a full and fair opportunity to litigate,

24  preclusion of re-litigation protects adversaries from the expense

25  and vexation of multiple lawsuits, conserves judicial resources,

26  and fosters reliance on judicial action by minimizing the

27

28      [4] To avoid confusion, references to pages of the Defendant's opposition are to the page numbers affixed by
Defendant, and not those reflected in the Court's header of the filed document.

1  possibility of inconsistent decisions. <u>Id.</u> at 153-54.

2      It is the burden of the party asserting the preclusion to

3  establish each of the the pre-requisites of issue preclusion.

4  <u>Kendall v. Visa U.S.A., Inc.</u> 518 F.3d 1042, 1050-51 (9th Cir.

5  2008).

6          B. <u>Analysis</u>

7      Plaintiff argues that the issues in the first and second

8  suits are not the same because the only issues litigated in <u>Waltz</u>

9  I were subject matter jurisdiction, and more specifically,

10  whether Plaintiff had failed to comply with the FTCA; issues of

11  equitable tolling and the statute of limitations were not decided

12  because they were not before the Court, could not be decided

13  because subject-matter jurisdiction was not subject to equitable

14  tolling, and were expressly excluded from the decision by the

15  Court's statement that because the Court lacked subject-matter

16  jurisdiction, it was unnecessary to consider the statute of

17  limitations (Order p. 23). Plaintiff contends that the subject of

18  equitable tolling was involved only because Defendants raised it

19  in their moving papers, but the Court did not address it.

20      With respect to defining an "issue" for the purpose of

21  applying collateral estoppel, it is recognized that issues always

22  arise within a concrete procedural context, and that specific

23  factual, legal, and procedural considerations are involved. 18

24  Moore's Federal Practice, 3d. ed., § 132.02, p. 132-17 (2008).

25  Abstractly, an issue for purposes of issue preclusion is a

26  single, certain, and material point arising out of the

27  allegations and contentions of the parties, as reflected in the

28  pleadings or from the affirmation on one side and the denial on

13

the other of some material point of law or fact as developed by the evidence. See, Paine & Williams Co. v. Baldwin Rubber Co., 113 F.2d 840, 843 (6th Cir. 1940).

In determining whether issues are identical, courts in this circuit are guided by various factors, including 1) whether or not there was a substantial overlap between the evidence or argument advanced in the second proceeding and that advanced in the first, 2) whether the new evidence or argument involves application of the same rule of law as that involved in the prior proceeding, 3) whether pretrial preparation and discovery in the first proceeding reasonably could be expected to have embraced the matter to be presented in the second, and 4) how closely related the claims are. Starker v. United States, 602 F.2d 1341, 1344 (9th Cir. 1979). The practice of a court in specifying that it does not decide a particular issue facilitates a later determination of the delineation of an issue for purposes of issue preclusive effect. Hydranautics v. FilmTec Corp., 204 F.3d 880, 885-87 (9th Cir. 2000).

Issues of fact are not identical if the legal standards governing their resolution are significantly different, even if the factual setting of both suits is the same. Peterson v. Clark Leasing Corp.,, 451 F.2d 1291, 1292 (9th Cir. 1971) (no preclusion, stemming from state court finding of availability of assets to personal creditors, of later referee's decision in bankruptcy statute as to adequacy of records); cf. I. A. Durbin, Inc. v. Jefferson National Bank, 793 F.2d 1541, 1547, 1550 (11th Cir. 1986) (different standards of good faith).

Here, there was some overlap of evidence, and the underlying

14

1  claims involved were the same.

2      However, analysis of the other pertinent factors leads the
3  Court to conclude that the issues pressed in this case were not
4  decided in Waltz I.

5      The Court in Waltz I did not decide the issue of equitable
6  tolling. It decided only that the Court lacked subject matter
7  jurisdiction over the action initiated by Plaintiff's filing the
8  complaint in Waltz I because the complaint was filed without
9  compliance with the FTCA; the prematurely filed complaint was
10 without the scope of Defendant's waiver of sovereign immunity,
11 and thus the Plaintiff failed to demonstrate a basis for
12 jurisdiction in this Court. The Court expressly stated that it
13 did not consider the statute of limitations. (Order at p. 23.)

14     It is recognized that generally subject matter jurisdiction
15 may not be conferred by consent or waiver. In re Kieslich, 258
16 F.3d 968, 970 (9th Cir. 2001). As the government concedes, defects
17 in exhaustion are, in a proper case, subject to equitable
18 estoppel or tolling and waiver. Leong v. Potter, 347 F.3d 1117,
19 1122-23 (9th Cir. 2003). However, in Waltz I, there was no
20 deadline to toll; the question of equitable tolling was pertinent
21 to the complaint in the instant action, which Defendant argues
22 was untimely. The only cognizable issue of subject matter
23 jurisdiction before the Court beyond the prematurity of the
24 complaint was based on equitable estoppel resting on factual
25 assertions that some intentional, wrongful conduct of the
26 government had occurred such that the government was actually
27 estopped from asserting its defense of lack of jurisdiction.

28     Issue preclusion operates to preclude re-litigation of only

15

1  those issues that were necessary to support the judgment entered
2  in the first action. <u>Haring v. Prosise</u>, 462 U.S. 306, 315 (1983).
3  The purpose of this requirement is to ensure that the issue will
4  be really disputed and that the loser will have put forth his or
5  her best efforts. Issues expressly not decided are unnecessary to
6  the decision. <u>See</u>, <u>Commercial Associates v. Tilcon Gammino, Inc.</u>,
7  998 F.2d 1092, 1098 (1ˢᵗ Cir. 1993).

8       The Court's decision in <u>Waltz</u> I appropriately looked only to
9  the presence or absence of jurisdiction in the Court based on the
10 limited evidence before it and in reference to the demanding
11 elements of equitable estoppel against the government. Any
12 findings concerning Plaintiff's conduct as excusable or
13 justifiable, or Plaintiff's counsel's diligence or excusable
14 neglect, were not legally pertinent to the discussion of
15 equitable estoppel, were unnecessary, and are not binding.

16      In summary, the only matter determined by the Court in <u>Waltz</u>
17 I was the question of whether the Court had subject matter
18 jurisdiction based on the premature filing of the complaint.

19      The issues decided in <u>Waltz</u> I differ from those in <u>Waltz</u> II
20 with respect to the governing rules of law. As noted in the
21 Court's order in <u>Waltz</u> I, equitable estoppel focuses on the
22 actions of the defendant; its elements are 1) the party to be
23 estopped knows the facts, 2) he or she intends that his or her
24 conduct will be acted on or must so act that the party invoking
25 estoppel has a right to believe it is so intended, 3) the party
26 invoking estoppel must be ignorant of the true facts, and 4) he
27 or she must detrimentally rely on the former's conduct. <u>Lehman</u>,
28 154 F.3d at 1016. When a party seeks to invoke equitable estoppel

against the government, an additional showing is required that
the agency engaged in affirmative conduct going beyond mere
negligence and that the public's interest will not suffer undue
damage as a result of the application of the doctrine. <u>Lehman</u>,
154 F.3d at 1016-17.

Although the parties disagree regarding the precise
parameters of the law of equitable tolling as applied to 28
U.S.C. § 2401(b), it has been held that equitable tolling applies
with respect to the statute of limitations under the FTCA.
<u>Alvarez-Machain v. United States</u>, 107 F.3d 696, 701 (9th Cir.
1996) (holding in part that nothing in the FTCA indicates that
Congress intended for equitable tolling not to apply, so it is
available for FTCA claims in appropriate circumstances).[5] In that
case, it was recognized that equitable tolling is applied in two
general sets of fact situations: where plaintiffs are prevented
from asserting claims by some wrongful conduct of defendant's, or
where extraordinary circumstances beyond the plaintiff's control
made timely filing impossible. <u>Id.</u> Reference to <u>Irwin v.</u>
<u>Department of Veterans Affairs</u>, 498 U.S. 89, 96 (1990) reveals
that the Court described the situations in which equitable
tolling has been allowed to include where the claimant has
actively pursued his judicial remedies by filing a defective
pleading during the statutory period, or has been induced or

---

[5] Defendant suggests that it could be argued that the FTCA statute at issue in the present case, 28 U.S.C. § 2401(b), is not subject to equitable tolling based on a recent decision interpreting the limitations provision of 28 U.S.C. § 2501 and recognizing that some statutes of limitation may not be subject to equitable tolling, namely, <u>John R. Sand & Gravel Co. v. United States</u>, 128 S.Ct. 750 (2008). However, Defendant states that the point will be more fully developed in the pending motion to dismiss. At this point, the Court feels constrained to follow <u>Alvarez-Machain</u>. Further, the Court notes that evolving or changing legal standards are a factor that supports the Court's conclusion that the decision in <u>Waltz</u> I did not involve the same issues as <u>Waltz</u> II.

1 tricked by his adversary's misconduct into allowing the filing

2 deadline to pass; relief has not been given where the claimant

3 has failed to exercise due diligence in preserving his legal

4 rights, and in any case, no more favorable equitable tolling

5 doctrine may be employed against the government than is employed

6 in suits between private litigants.

7     Issues of Defendant's conduct and Plaintiff's conduct or

8 misconduct pertinent to the doctrine of equitable tolling remain

9 to be decided on the basis of the pertinent evidence.

10     It is true that a dismissal on jurisdictional grounds may be

11 conclusive on jurisdictional issues actually decided. <u>Segal v.</u>

12 <u>American Tel. and Tel. Co., Inc.</u>, 606 F.2d 842, 845 (9th Cir.

13 1979). However, it does not necessarily preclude seeking

14 jurisdiction based on different and unlitigated jurisdictional

15 facts. <u>GAF Corp. v. United States</u>, 818 F.2d 901, 913-14 (D.C.Cir.

16 1987).

17     As the order dismissing <u>Waltz</u> I reflects, the Court

18 expressly and affirmatively found that Plaintiff did not meet his

19 burden of proof as to jurisdiction, or as to the factual

20 requirements of equitable estoppel. The Court's findings of fact

21 concerning Judge Kapetan's representations, wrongfulness of

22 conduct, trickery, and misrepresentation are to be viewed in the

23 context in which they were rendered; they are to be measured

24 under the specific requirements of equitable estoppel against the

25 government to assert a defense of jurisdiction, and in light of

26 the overall finding that Plaintiff had not met his burden of

27 proof. The Court did not consider and make findings concerning

28 many factual matters pertinent to the present case, such as the

factors pertinent to the overarching reasonableness of the
conduct of Plaintiff's counsel in timing the second complaint as
he did; the nature and extent of any negligent conduct or
misunderstandings among counsel during the litigation of _Waltz_ I;
the details of the conversations, correspondence, and other
exchanges between counsel, including purported understandings
concerning the need for any cure of any defects perceived in the
case, and the more general conduct of the litigation; and the
individual memory and experience of the persons allegedly
involved in the conversations and exchanges. This evidence was
not before the Court and was not considered or evaluated in _Waltz_
I.

Given the content and posture of the two cases, the pretrial
preparation and discovery in _Waltz_ I could not have been
reasonably expected to have embraced the matters involved in the
present action.

The evidence submitted in _Waltz_ I concerning the Court's
jurisdiction was only documentary. Some of the material involved
multiple layers of hearsay-type evidence. There are
inconsistencies in the declarations concerning the conduct of
Judge Kapetan, Boukidis, and Plaintiff's counsel regarding the
behavior of the government's representatives and that of
Plaintiff's representatives as well. This conduct is pertinent to
this action. What little evidence that was submitted to the Court
in _Waltz_ I was hastily gathered and was in the form of
declarations; one exhibit was first tendered at the hearing
itself. (R.T. at 5.) Thus, the issues in the present case are not
fully developed factually; they are presently reflected by

1  evidence that has not been subjected to cross-examination, and

2  the full universe of evidence concerning the matters in dispute

3  has not even been explored by formal discovery.

4      When Waltz I was decided, Waltz II was already pending, and

5  the parties appeared to anticipate that equitable tolling would

6  be litigated in the second action. Indeed, the government's

7  attorney suggested that the Court might not want to decide it all

8  in the first action. (R.T. 11-12, 12-18.) It would be unfair to

9  the Plaintiff to deprive her of an opportunity to raise and fully

10  litigate a critical, additional issue that the Court did not

11  decide in the first action based on the Court's understanding of

12  the limited matters properly before it.

13      In summary, the Court determines that the issues litigated

14  in Waltz I were not the same as those in the present case.

15      Accordingly, the Court concludes that collateral estoppel

16  does not bar the discovery in the present case.

17      IV. Privilege

18      Defendant argues that many of the documents and/or

19  communications sought in discovery will be privileged as

20  attorney-client communications, and that a privilege log will be

21  submitted when appropriate. Determinations of privilege and

22  related questions of waiver will be determined as they arise. The

23  Court will set a telephonic discovery status conference to

24  discuss the handling of privileges, the scope of discovery, and

25  any other discovery issues.

26      V. Reciprocity

27      The Court notes that Defendant requests reciprocity for

28  leave to depose attorneys Paboojian and Bell on non-privileged

matters, as distinct from internal communications between attorney and client. (Opp. p. 17.) This appears to be appropriate under the Rules and fair under the circumstances. These matters may be discussed at the status conference.

VI. <u>Disposition</u>

In accordance with the foregoing decision, it IS ORDERED that

1. Plaintiff's motion to compel discovery IS GRANTED; and

2. The parties ARE DIRECTED to meet and confer regarding the discovery issues outstanding in the case and to call Harriet Herman at (559) 499-5692 to schedule a telephonic discovery status conference to discuss outstanding discovery issues, including but not limited to the scope and scheduling of discovery, as well as the scheduling of the motion to dismiss.

IT IS SO ORDERED.

**Dated:    May 15, 2008**           **/s/ Sandra M. Snyder**
                                        UNITED STATES MAGISTRATE JUDGE